Good morning. May it please the court. Christina Ohlmeyer for the appellant, Kale Flagg. This is on a petition for a re-hearing after the panel opinion vacated the district court order and remanded this case to the state court. The appellant's position is twofold today. Why the opinion of the panel should be reinstated. One, that the panel's opinion did not over rule Holder v. Abbott, McDonald v. Abbott, nor Melder v. Allstate. Because all three of the administrative remedies in those prior cases were not like the Louisiana Medical Malpractice Act. Two, that the appellant's claims may have been procedurally premature against the medical defendants. However, under the prong of the improper joinder test, his might impose liability against the non-diverse medical defendants under the Travis B. Irby test. This finding for the appellant would be consistent with the doctrine of improper joinder and its original foundation under the Plymouth and Wrecker jurisprudence. If we look at the first prong, Holder, Melder, and McDonald, and specifically the Holder and McDonald cases with the National Vaccine Act, we see that the National Vaccine Act is very comprehensive. It's a federal statute that provides for adjudication of the plaintiff's claims through a process that ends in an actual judgment, and even possibly a monetary award for those plaintiffs. The LMMA, the Louisiana Medical Malpractice Act, however, is not an evidentiary hearing in front of a panel of physicians. The panel opinion after they convene, it can be used in a trial court level. However, it's not an actual decision that can be appealed. Why is it a difference, for the purposes of federal jurisdiction, that one administrative proceeding is more comprehensive than another, if both of them preclude litigation before exhaustion? I think the distinction should be procedural versus substantive in this case. Like the distinction between the National Vaccine Act as well as the Louisiana Insurance Code remedies, they both had adjudication that ended in an actual judgment. The district court case that would come after that would be tantamount to an appeal. The Louisiana Medical Malpractice Act is just an evidentiary hearing that actually has no judgment at the end of it. I think for the purposes of the jurisdiction, that the improper joinder doctrine that we're here today for is that we have to look at that prong, whether or not there's a reasonable basis for the plaintiff to win under state court claims against the non-diverse defendants. I think that you can see that if there's adjudication already, then there's a judgment there that shows whether or not they can. That needs to be exhausted first, as opposed to the LMMA that does not give you whether or not there's going to be a judgment saying whether or not the state court would impose liability against those defendants. My understanding of Holder was that the administrative agency did not have the right to actually resolve the claim. Is that not right? I believe in Holder, as well as the Louisiana Insurance Code, there was actually an adjudication because in that act, is anything over $1,000, they have to go in front of that adjudication to end those claims up to a certain amount. If that plaintiff or that claimant does not agree with the monetary award that was given, then they can move forward to the district court and adjudicate there. It's not a final adjudication. It would be a final adjudication just like any other trial or ... No, I mean, ordinarily, if you get a case adjudicated, the party that disagrees with it, you can take an appeal, but you don't get a de novo trial. Yes, Your Honor. I mean, I don't see how Melder is any different from this case. How Melder is any different from this case. For the Louisiana Insurance Code, there's a comprehensive adjudication there, as well. There's an appealable decision at the end of that as well. More things you've got to, more hoops you've got to jump through, but at the end of the day, if the administrator doesn't think you have a claim, that's not the end of the case. Neither is it for the Louisiana Medical Malpractice Act, but either way, there's ... That's my point. That's my point. However, the difference is, the distinguishing definitely is, that there's absolutely no judgment other than a standard of care evidentiary issue. It's not whether or not the plaintiff has a claim at all. It's whether or not that evidence is there to support ... Okay. Let me ask you this, Counselor. When we were in the panel with Judge Davis and Judge Elroy and I, we were bound by these other cases, and so there really wasn't any other option but to discuss these cases, but now we're en banc. One of the purposes of taking a case en banc is to fix precedents that maybe have gone astray or maybe don't stand up in the light of day, so make the argument for us, if you would, that we should overrule Holder and Melder to the extent and consistent with a ruling here in your favor. I appreciate the question, Your Honor. My contention, though, is not that there should be overruled necessarily. I think that your opinion did not overrule it to begin with. No, and we don't have that power, but let me come at it a different way. We do now. Yes, Your Honor. We have that. We didn't have the power as a panel to overrule those decisions, so we were bound by them, and I personally think the panel opinion does a good job of distinguishing them, but some of my colleagues might disagree. We're not bound by Holder and Melder, so does it make any sense in the question of looking whether a plaintiff has stated a claim against a defendant to look way down through three or four hoops to find whether there's a defense that the defendant could prove, including a defense of procedural prematurity? Should we continue this line of cases that leads us there, or should we clean that up? I think that it should be cleaned up because there is no definitive rule, and you haven't decided it, and neither has the Supreme Court, and it hasn't spoken to it in over 90 years. However, and I do think that the exhaustion remedy bright-line rule that the appellees would like is too broad, is overbroad. I think that it should be, in certain cases, that you do look at more of a piercing the cases, not necessarily a summary inquiry, but more of a 12B6, which I think would be in concert with the Smallwood decision as well as the other decisions. I think that if we look at the separate adjudicative schemes of the cases a little bit further, that should be sufficient to delineate a better rule for the improper joiner doctrine. But as I understand, you are not urging this Court to overrule Smallwood or either Holder or Melder. I'm not saying that the appellant is—we are opposed to the—I don't think that the original opinion overruled it to begin with. I think in— But you've not made that argument before us that those three cases should be overruled. I believe that my argument in brief was that if you, en banc, decided to come up with some type of, for lack of a better word, bright-line rule, that they could be reevaluated and narrowed in construction. But I don't want the Court to make its own argument for that. You are not going to make an argument that would justify overruling those cases. I believe that I have. I'm not sure I understand your question, but— Are you arguing—and if you are, I would like to know the reasons that you say Smallwood should be overruled or either Holder or Melder. Why should they be overruled? Smallwood—the only thing that is good right now for the contention is Smallwood's holding had to do with whether or not the nondiverse defendant had the same argument against all the defendants and therefore wouldn't be remanded. That's not at issue here. But one of the prongs that— Smallwood is not at issue here. No. But, however, the analysis where they—you look at the two prongs of the improper jointer test is. And, obviously, the actual fraud is not at issue. The second prong in which that we show whether or not there's a reasonable basis for the state court to impose liability against the medical defendants, that's the important thing here. And the Louisiana Medical Malpractice Act allows the plaintiff, the claimant, to come in front and have the medical review panel before they file suit. However, there's a presumption there that they already have that claim. No matter what, after the 90 days, they can file that suit. But I did hear you say that, under certain circumstances, the courts are entitled to pierce the complaint to determine diversity jurisdiction. That has been—the circuit has been split. I think all the circuits have been split. That's one of the ways that they have looked at it. I think that the proper analysis would be more of the Smallwood first prong—or, I'm sorry, second prong, the 12B6-like, rather than the summary piercing of other cases. You know, in this—in the record in this case, there was a concession that the claim had not been exhausted. So there wasn't any piercing involved, was there, to show that fact? I'm sorry. Could you repeat yourself? In this—in the record in the district court, there was a concession that the claim against the medical provider had not been exhausted. So there really wasn't any piercing of the—by summary judgment evidence, was there? No, Your Honor. I don't believe that I said that there was an exact piercing. I don't think that necessarily that the court should narrow—I mean, should go that route. I said that the rule needs to be narrowed. I believe that, yes, there was a concession that there was an exhaustive claim, just—and that is similar to the holdings in the other cases. However, it's overbroad to say every administrative remedy needs to be exhausted, because specifically to the Louisiana Medical Malpractice Act, it's not an adjudicated function. I think that that adjudicated function really speaks to the procedural versus substantive aspect. Let me ask you this. Do you have any case where an administrative scheme is set up and exhaustion is required on pain of dismissal? If you don't exhaust, you can't bring a suit. You have any case that does not just apply that statute and say, if you don't exhaust, you can't file suit? No, Your Honor. I do not at this time. I mean, in all the federal exhaustion claims, that's the way it works, isn't it? Well, in different matters. I mean, obviously— Well, sure, there are different exhaustion schemes, but like Title VII, you have to exhaust with the EEOC. And if you don't exhaust, the statute says you can't file suit. And if somebody tries to file suit without exhaustion, federal courts unanimously dismiss those suits, without prejudice, of course. Correct. But in Title VII cases, that adjudication is more like the Holder and Melder, the Vaccine Act, as well as the Louisiana Insurance Code. There's an actual adjudication. There's a mediation in that. It's my understanding that there's a mediation process. There's no mediation process for the Louisiana Medical Record. There's no adjudication in Title VII, administratively. I believe it. I thought it was a mediation process. You're required to conciliate. And if the time lapse is before you conciliate, you can get a right to sue letter, but you have to have your right to sue letter to proceed under Title VII if conciliation has not been accomplished. Thank you for clarifying, Your Honor. Okay, but this particular statute also has a bunch of exceptions. It can be waived. It can be agreed against. There could have been the passage of time that would render it nougatory even after you filed, because y'all had filed. The point was you hadn't been through the whole process. So this isn't even something where we can say yay or nay based on some sort of concession. Your pleadings did not affirmatively reveal any problem with exhaustion, did they? Okay, hit it. Uh-oh. Question two. Ms. Ohlmeyer, did your pleadings suggest that you had failed to exhaust your own petition in the Louisiana court? I don't believe the record showed that, no. No. It said these guys committed malpractice and these other guys defectively manufactured. It was only by piercing through that and looking further that we found this whole exhausting thing and the failure to exhaust and any concessions and all that, right? Yes, Your Honor. Okay. However, it's normal for, I would say, and the cases show, the Johnson v. SkyMed case also shows that it's common for plaintiffs, especially right before a prescription time, to file suit against the defendants, including all the medical defendants, just in case the medical review panel reveals that one of the defendants is not, in fact, under the LMMA. Then we would have a prescription. That's even further issues, but the point being there's nothing automatic here because there's some exceptions to this, even if we were to view this in sync with Holder and Melder and so on. Let me go, let me respond to the question she just asked. Yes, Your Honor. All right, now. Well, let me go to your prescription problem. Doesn't the administrative scheme expressly suspend prescription against the medical provider, any provider who's not a qualified provider, and any joint tort feasors while the exhaustion proceeding is going on? Out of an abundance of caution, it is the standard that we file suit against all the medical providers. Well, I mean, doesn't the . . . There is a toll. Doesn't it explicitly say that? Doesn't it say that? Yes, yes. The statute does provide for a toll of the statute of limitations for 90 days past the medical review . . . In this case, you filed a proceeding with the board, but immediately after that or soon after that, you filed the lawsuit, even though the statute says that no court shall entertain any suit that is not written through the exhaustion procedures of the statute. Why did you file the statute before the exhaustion period had expired? Again, out of the abundance of caution for the prescriptive period. They were filed, I believe, a day apart to preserve my client's cause of action. You know, this type of case, one of the main differences with the LMMA, too, is that in finding the diversity jurisdiction and removing it to a federal court already, it doesn't exception. There have been case laws that speaks to that. That was the Muriel Don case in the Eighth Circuit, as well as the previous cases before Holder and Melder that argued that . . . Isn't that exactly what happened in this case? The district court dismissed it because it was filed prematurely. The federal district court did here, right? Yes. However, my argument is . . . I'm sorry? You say that's a permissible practice under state law to dismiss a prematurely filed case, and that's exactly what happened here, so the district court acted correctly. Well, I believe that the state court was the proper court to dismiss that case under the prematurity. If there was an improper joinder is the issue, I believe, right now, and I don't believe that the medical defendants were improperly joined. When you were asked earlier about federal statutes and schemes, you weren't agreeing with the court that federal statutes and schemes find exhaustion jurisdictional, were you? I'm a little confused by that. In fact, Title VII, it's not jurisdictional. It's an affirmative defense, and also the PLRA, the Prison Litigation Reform Act. Is it your position that the federal statutes or exhaustion is jurisdictional, or is it your position that it's affirmative defenses? I can't . . . Are you not taking a position? I'm not taking a position as to the PLRA. I'm not familiar with that section. Or Title VII, either one? No, I don't believe that I spoke that it was jurisdictional. Okay. I think somebody, perhaps one of the questions, inferred that, but you're not saying that that's correct, are you? No, ma'am. And in fact, if our case law was to the contrary, you certainly wouldn't argue with that. No, Your Honor. Okay. I have another question. Have you filed suit against Dr. Elliott and the Foot and Ankle Center and the West Jefferson Medical Center in state court now? Yes, I have, Your Honor. And what is the status of that case? I just filed suit last month. So if we were to conclude, contrary to the panel opinion, that we, in fact, have . . . the federal court had jurisdiction here, but reversed the 12b-6 that was granted in favor of the manufacturing defendants, would you then be able to join the manufacturing defendants down in state court? Would you be able to get a dismissal without prejudice from the federal district court and go to the state district court and join them and go back to where you wanted to be three years ago or however long it's been? I'm not sure if the dismissal without prejudice would be the correct avenue, but yes, I would be able to join it. I actually filed suit in state court because of the situation. I wasn't sure how it was a separate matter, but . . . Let me just ask you to put yourself in the shoes of the district court here. He had this suit removed. He had the in-state medical providers and the out-of-state manufacturing defendants. The first . . . right out of the hopper, the plaintiff moved to stay the case in district court because the plaintiff had not exhausted their claim against the medical provider. The judge sees right away that the claim has not been exhausted. The judge then follows, does he not, what any state court would do and dismiss that claim against the medical provider without prejudice. Would a state court have done any different? I think it's interesting that you say to put ourselves in the district court's shoes. Say again. Would a state court have done anything different? I believe that the state court, if faced with the exception of prematurity, may have dismissed the case. However, the district court was faced with Holder and Melder. The point here today, the appellant's argument, is that the Holder and Melder cases shouldn't be as broad as it's been used in regards to the Louisiana Medical Malpractice Act. The district judge had a case where an in-state defendant under state law must be dismissed. In his opinion, he also said that that amounts to an improper joinder. He's got an improper joinder of the in-state defendant, so why was he not entitled to go ahead and exercise jurisdiction over the out-of-state defendant? I believe at the time, contrary to his two holdings in Doe v. Armour and Doe v. Cutter, Judge Feldman had Holder and Melder in front of him to use. If he did not have those two cases, then I think that he would have possibly ruled otherwise. What else could he have done with the case after he saw that it was subject to being dismissed? I think he could have remanded it back to the state court. That's the problem, isn't it? It's a car before the horse. Before you can do anything as a judge, you have to have jurisdiction. And if you don't have jurisdiction, no matter what some other court that did have jurisdiction might could do, you can't do it. Is that basically the bottom line here? Yes, Your Honor. But the federal courts always have jurisdiction to determine their jurisdiction, do they not? Absolutely, yes, Your Honor. And why wasn't that what Judge Feldman was doing, determining that he had jurisdiction over the nondiverse defendant? I can't speak to Judge Feldman's mind exactly. However, I believe from his previous rulings in cases where there was medical defendants and the LMMA hadn't been exhausted, that he would remand had it not been for the Holder and Melder cases. And that's the reason why the appellant would like this court to narrow that rule. All right. Counsel, you've got a red light, but you've reserved rebuttal time. Thank you. We'll hear from Mr. Roach. Thank you, Your Honor. May it please the Court, Randy Roach for Stryker. I want to embrace Smallwood, and I want to suggest that this is the poster child for why Smallwood was the best thing for this court to do. I'm not talking about the Cockrell issue, Judge Smith. I am talking about the formulation of the two prongs. And like opposing counsel, it seems to me it's all about the wisdom and the brilliance of Smallwood is found in the 12b-6 language in the second prong, where the court expressly says, if there are discrete omitted facts from the pleading, that's the perfect situation for something which is summary, which I would suggest is not pleading piercing, which we have in this case, so that the court can find that there is no reasonable possibility of recovery. In fact, there's no culpable claim. But the fact is, they may yet recover. So you don't have to walk into court as a plaintiff on the very first day and be able to win your case. You just have to have a possibility of recovery. And here they are, all these umpty-ump years later, fixing to have that. And they may very well win, having gone through this whole process. They may win against the medical defendants. That sure doesn't sound to me like a sham defendant. But you determine jurisdiction at the time of removal, and that's the fault in that argument. Wait, wait, wait. Answer my question, please. Is that a sham defendant? Somebody that we may yet, we the plaintiff here, to put it in their words, may yet recover against. It is a sham defendant in this lawsuit. It may not be a sham defendant, to your point, in a subsequent lawsuit. But in this lawsuit, which was filed before the commencement, before the finishing of the review process, there was no discretion for either a state court or a federal court to do anything other than to dismiss it. So this lawsuit, it was absolutely a sham, and they could not recover in this lawsuit. What if the review process would have been completed a day or two after the lawsuit is filed, where the court has jurisdiction when the motion to remand or dismiss is before it, but did not have jurisdiction when the lawsuit was filed? What happens then? The court says, I have jurisdiction right now, but I didn't have it last week when the lawsuit was filed. Your Honor, the answer to that question lies in the Brister decision, an intermediate court decision from Louisiana. That situation where before the ruling, the review panel did issue its opinion, and the court of appeals in Louisiana said, and this is what the federal judge in this case would have to do, it still has to be dismissed under the express language of the statute, and that's what they did. They dismissed it, even though it was no longer an opinion that was outstanding. The opinion had been issued, but it still had to be dismissed because of the express language of the statute. Well, the federal judge can't do it until the federal judge has jurisdiction because there's diversity. And so why is an unexhausted claim, how is that a jurisdictional bar? I mean, because in federal claims, it's not. And in fact, the federal court, the Supreme Court has been moving well away from the idea that if you fail to exhaust, that that's jurisdictional. So why isn't the fact that it's not exhausted, why does that mean that it's, that the Supreme Court, I mean, that it would have diversity jurisdiction? Let me suggest, Your Honor, that there is a distinction, and it was raised earlier with the opposing counsel, between jurisprudential and jurisdictional exhaustion. Why is this jurisdictional exhaustion? Because it's express. It's not implied exhaustion. Counselor? What statute? Counselor, isn't the point that the federal judge has to determine at the time of removal whether he has jurisdiction or not? Absolutely required. That's the time to determine that. He has to determine whether there's a misjoinder of the in-state defendant who is destroying diversity. So, I mean, once he determines that on the merits, or at least at the time of the removal, there's no viable lawsuit. There's no, he can't recover on that lawsuit. So, I mean, isn't that the point? Exactly the point. He can't recover because he can't be in court. Okay? The express language of the LMMA says, cannot commence a lawsuit. And so the Louisiana Supreme Court and the intermediate courts and federal district courts since Smallwood have all said, got to dismiss. But some similar courts in other jurisdictions with some similar state statutes, like Indiana, for example, has taken the exact opposite approach, hasn't it, haven't they? Well, Your Honor, I'm thinking of Woods. I can't say that it's never happened. There may well be an exception or two. I wasn't thinking Indiana was. I think that there are a number that take the opposite approach to dealing with it, this placeholder lawsuit that doesn't preclude, I mean, doesn't render a diversity jurisdiction. Your Honor, this gets back to the conversation we were having a minute ago, and that is the difference between express and implied exhaustion. You know, it depends on whether the state statute implies exhaustion, kind of as a regulatory exhaustion, or whether you have in the LMMA and in the Vaccine Act an express prohibition on suit. There's nothing implied. It is a special deal. And the Supreme Court case, U.S. Supreme Court case on this, Your Honor, is Kappweinberger v. Selfie, where the court expressed, U.S. Supreme Court expressly discussed the difference between jurisprudential exhaustion and jurisdictional exhaustion and says if you have an express congressional, in this case, declaration, you can't bring suit. Yeah, but if you look at the PLRA, that looks pretty much like that, but they've decided that is a defense, that you can't just look at the plaintiff's pleadings and dismiss if they fail to plead that they did exhaust, even though absolutely if the defendant comes in and shows lack of exhaustion, absolutely you dismiss. So, I mean, that's a problem with that argument, isn't it, that Louisiana courts of appeals don't get to tell federal courts whether they have jurisdiction over something. So the question of whether exhaustion should be treated as a defense in a statute that has this many exceptions is a question for us, and that's what we're looking at here. Should we treat this as a defense, and if so, should we allow this degree of piercing of pleadings to get to a place where the federal court has jurisdiction on what otherwise looks like a garden variety, vanilla, medical malpractice on inserting a defective device kind of case? The express language of this statute, Your Honor, has been construed, and I support the concept that it's jurisdictional, that you cannot maintain a suit because the express language of the statute. Well, then you can't usually agree to jurisdiction, but here you can agree the defendants can waive this. They can waive this process, and so it seems to me that's contrary to the notion of being jurisdictional because you can't agree to federal jurisdiction, for example. Mr. Stryker. Your Honor, please. Thank you. I just have one question. It seems to me that the Louisiana statute has a substantive component to it in saying that no suit shall be filed until this process has been undertaken because, after all, the point of this process is to test the plaintiff's allegations before a disinterested panel of medical experts and therefore thwart premature litigation. Isn't that right? That is exactly correct, Your Honor, and that's what the Louisiana Supreme Court has found, that it was a substantive decision of the Louisiana legislature to try to protect doctors and keep them from having to leave the state because of the medical malpractice crisis here in the mid-70s. Your Honor, this court in Woods v. Holy Cross involving the Florida medical malpractice statute, tort reform, found, just as Your Honor suggested, that it was in fact a substantive piece of law, not a procedural rule of law, to prohibit claims from going forward, and the reason for that was because the legislature had determined that it could not accomplish its goal of protecting doctors from litigation unless it could keep cases from going forward, this non-commencement concept. And the Woods v. Holy Cross cites to at least, I want to say, a half a dozen different state medical malpractice reform cases that were treated the same way as substantive law that, frankly, federal courts have to follow. It's not procedural. Can you answer Judge Haines's question, please, about if you can waive it as a defendant, then doesn't the defendant then have the keys to jurisdiction in his or her pocket? And how is that appropriate for the defendant to walk in with the keys to jurisdiction in their pocket? Your Honor, I don't believe that's the case. My understanding from the statute is that it has to be, waiver has to be agreed upon. And under what circumstances would the parties agree to waive? The only thing I personally can think of is that if there is an acknowledgement by the defendant that he's going to be found liable. Now, why would you, otherwise you wouldn't waive. That's a philosophic sort of question. Her question is more precise. We're talking about jurisdiction. We're talking about a court's power to rule. And typically we don't give the parties the power to decide the court's power to rule. And I'm not suggesting that that's what happens here. I understand that there's an argument that you could say that. The statute doesn't do that. Why couldn't Louisiana law determine whether exhaustion is jurisdictional? Say Louisiana has a statute that says there's no jurisdiction to bring this state cause of action until the exhaustion administrative process is exhausted. I mean, Louisiana's creating the cause of action, so if it says it's a jurisdictional requirement, why wouldn't we be bound by the state's statute? I think you should be, Your Honor, in Erie, as an Erie court. If it is in fact a substantive rule of law, I believe you are bound. And that is what the Louisiana Supreme Court has done. It has said no suit can be commenced because of the expressed language of the statute. It has been, as far as I know, uniform in that. Let me ask you this. My take on Judge Feldman's ruling was that because the claim had not been exhausted and under Louisiana law he was bound to dismiss it, that's a merits dismissal. And after he dismissed it, then there's a misjoinder. And the misjoinder is because it's not a valid claim, because you can't recover on that suit, it has no merit. And it's dismissed as a meritless suit, and then that means there's a misjoinder. You don't have that party before you. Isn't that the way it works? That is absolutely correct, Your Honor. And that goes back to the turn of the century in U.S. Supreme Court cases such as Alabama v. Thompson and Wecker, where if you do not have a colorable claim against the non-diverse, the diverse defendant, then you dismiss and it is held to be grounds for denying the remand. Why aren't those cases distinguishable? Wecker, a 1907 case, and Wilson, a 1921 case, involved in-state defendants not present at the time of plaintiff's injury with no relationship to the accident, the true sham defendant to try to defeat diversity jurisdiction. Here, Dr. Elliott performed the surgery on Ms. Flagg, and it took place at the Foot and Ankle Center, and they're citizens of the state of Louisiana. So this is not – these facts are very different than Wecker and Wilson. I would respectfully disagree, Your Honor. Okay. Tell me why, Mr. Roach. In Wecker, the people who were the sham defendants were people who worked at that facility. The allegation was- But they weren't even there that time. Well, the – I know this is done by affidavit, but my reading of the case said that the plaintiff affidavit said that he overheard the head of the company direct one of those sham defendants to protect against the very danger that their client was injured by. That was the allegation, and the Supreme Court credited it as opposed to saying, sorry, we can't go there. I'm not suggesting that's what we should do these days, but that's what the Court did in that case. So I really don't think you can call them, you know, someone who was a complete stranger to the case because there was a real dispute. But they were strangers to the – well, to the accidents at issue. And so – and this case is so – it's not at all that sort of case where you sue the local representative. We know those cases, you and I, where it's iffy whether they're really involved. These people are centrally front and center in this case. It's very different. Why shouldn't we change our jurisprudence in this area, take this opportunity, since we're here anyway, when we've been criticized by many law review commentators as having the strictest most – you know, that we do pierce. You say we don't pierce, but we've been – lots of law review people say we pierce and that we have the strictest look at this in the whole United States, and isn't that bad for federalism? Again, I think Smallwood fixed that. And my understanding is that commentators since Smallwood have said that the numbers of fraudulent jointer cases out of the Fifth Circuit has plummeted compared to what it was pre-Smallwood. But we're not – There are reasons not to follow the law reviews. I'm just wondering, you know, if we should bring our case law in line with the other circuits. Your Honor, even if we were – if you're suggesting that we follow the – this court adopt the First and Second Circuits, which ostensibly say we don't pierce, my understanding is the district courts have found it impossible not to pierce. Okay. They would do the same thing here that I'm suggesting this court should do. Is it your position that the Supreme Court binds us to find fraudulent jointer in this case? Yes, Your Honor. And citing Wecker? Or what is your case law? As I understand the U.S. Supreme Court's jurisprudence, they think that this was a deal – you know, Congress in the Judiciary Act and subsequent acts codified basically a framers-related deal. There was a compromise where people were concerned that home cooking inside states would be terrible for out-of-state parties and corporations. But does this specifically apply to this circumstance? The terms of the statute – the jurisdictional statute would not apply by its facial terms, so – to this situation. I'm sorry, Your Honor. I'm saying the text doesn't dictate the result that you request. My understanding is the text does dictate the result, which is a two-step process. One is saying you can't be in court at this point in time. You would have to dismiss and bring another lawsuit against those defendants. And then the federal district court is left with nothing other to do than say I now have diversity because I've dismissed for improper jointer. Okay. But the problem with your answer previously about lack of jurisdiction allows you to make a merits determination is that's exactly opposite of the reality, which is when you lack subject matter jurisdiction as a court, you can't make a merits determination. That's the whole point. When I was a state district judge, if a patent case had been filed in my court, I couldn't say, well, this isn't patentable and all this, so I dismiss with prejudice. My option would have been to dismiss for lack of jurisdiction, and that's it. I wouldn't have had all of these other options. So that's the problem here because then it leads to this idea of misjoinder. And we don't have a misjoinder here. These two sets of defendants caused one harm to, I don't know, the kale flag. I don't know if it's a mister or miss, actually, at this point. But anyway, kale flag. And therefore, you don't have a situation of misjoinder, fraudulent joinder, whatever other joinder. These are people who should be tried together. And if the state court felt it needed to dismiss the medical defendants, it could have stayed against the manufacturing defendants and waited. Now we've had these gone on two different tracks. And here we are three years down the road, and we haven't really resolved either one, have we? And they're on two different tracks. And now if we were to agree with you on jurisdiction but disagree with you on 12B6, it would go back to the district court, and the medical defendants would be off here trying their case, and the manufacturing defendants would be off here pointing the finger at each other in these two different cases. That's the world that you're asking us to bless. Your Honor, I believe that's the world that the Louisiana legislature has put you in. They have made that determination that they would rather have parallel litigation tracks than provide consolidated litigation. Do you know of any reason that the plaintiff couldn't now amend to add the manufacturing defendant in her state court suit? No, Your Honor. I know of no reason. Well, the 12B6. Well, if it doesn't have any ñ I mean, assuming that we reverse that, of course, if there's no merit to the claim, it's no merit. But assuming that we reverse the finding of no liability on the manufacturing defendant and the plaintiff amends her state court suit to add that defendant, then the plaintiff can litigate against those two defendants in one proceeding. I know of no federal court that wouldn't stay a suit against one defendant to allow the plaintiff to litigate against both defendants in another forum. I mean, is that ñ do you agree with that? I don't disagree with that, Your Honor. I do think that the Louisiana legislature has made its decision, and I believe this court, as an Erie court, has to follow that. Let me ask you something else. Wasn't the whole problem created here by the plaintiff jumping the gun and suing the medical provider before he exhausted the claim? Exactly right, Your Honor. And my understanding is that that doesn't happen normally. I would suggest this is an outlier, that after the act occurred, plaintiffs stopped suing defendants, medical defendants, just for purposes of disrupting diversity. And that was the purpose of this piece of legislation, and it worked. And if we went to a situation where plaintiffs can file suit despite not having obtained a panel opinion, then that's a very bad result in many respects. Number one, plaintiffs win. A piece of legislation that says thou shalt not file lawsuit prior to the panel opinion has now said you not only may file a lawsuit, but you will be profited and rewarded for filing that lawsuit because you will deny the defendants who are otherwise entitled to diversity jurisdiction in federal court, you'll deny them that. Well, no, because if they had waited, under your theory, if they had waited, we wouldn't even be here if they had waited and filed the two of them together. Exactly. So you're actually, by claiming to be deferential to the states, taking the states' court's right away to decide all of this and figure this out for themselves, which they're perfectly capable of doing. So your argument really is that they should be punished for the prematurity by somehow creating subject matter jurisdiction in federal court, which is a very odd argument in my humble opinion, but I'll let you respond to it. Well, second part first, the plaintiffs aren't creating federal court jurisdiction. I mean, the defendants have a right to remove. No, you don't have a right to remove. So under your theory of the world, they should have waited for this report, and in September of 2015 when it came out, they should have sued your clients and the medical defendants in state court, and then you would have zero argument for removal, certainly no right of removal because they are not sham defendants and there is a cause of action against them. And so you would have had no argument whatsoever and been sanctioned for it if you had tried to remove. Isn't that a fair contention? I don't believe so, Your Honor. First, there's a voluntary-involuntary rule problem, isn't there? I mean, we can't wait and have a court dismiss and then avail ourselves of the right for federal court jurisdiction. No, that's not my question. My question is that your theory of the world is the plaintiffs jumped the gun. They should have waited. And I'm saying had they waited, had they never filed the original 2012 or whatever the date is lawsuit, but instead waited until September of 2015 when this ruling came out and filed the lawsuit against the medical defendants and your clients, you would have had zero argument to remove the case. Is that fair? After the opinion came from the Medical Review Board, then they would have a right to bring that action against the medical defendants. And your clients. I'm saying had this lawsuit that we're here today on never happened. That's correct. Okay. And you would have had zero grounds for removal. That's correct. Okay. And limitations would have been told against your clients too during that whole process or not under the terms of the statute? I can't speak authoritatively on that, Your Honor. I would like to say my reading is that it's told only to the medical defendants, but I don't know that that's right. So they would run the risk that they'd run out on you. So they're in a terrible position. Yes. They are in a terrible position. Created by the Louisiana legislature, not by this court, and not by me, and not by any defendant. This is the legislative landscape in which all of us operate. And basically I think the arguments against this second guesses the Louisiana legislature fundamentally, which I believe is improper, which I don't believe an Erie court is supposed to do. Well, they're not in a terrible position because, I mean, you can sue both of them separately. Exactly. Nobody's in a terrible position. You just sue them differently and in separate suits. That's all. Yes, Your Honor. But haven't you taken advantage of that by saying when they tried to contend res ipsa loquitur as a ground for supporting the claim against your client, you point the finger at the medical defendants, which is made easier if these two things are in different lawsuits. There are strategies like that, Your Honor, we all know exist. And you're a good lawyer and you avail yourself of them. I mean, you would be really not a very good lawyer if you didn't avail yourself of that strategy. I'm not being critical of that. I'm saying that that's the problem with it. And so whatever you want to say about all of these metrics, my concern is you basically conceded the point that they are being punished for filing too early in Louisiana court by giving you some right of removal you otherwise wouldn't have and creating jurisdiction in the federal court. That is the effect of your answer and your argument here. It is the effect, but it's not punishment if that is the legislative scheme. It's a deterrent scheme. It's designed to keep people from doing it. And when they don't jump the gun, then the system has worked. And yes, Judge Jolly is correct. You'd have parallel track litigation, but that is the decision that should be honored of the Louisiana. But the Louisiana statute does not say you try these people separately. And you haven't shown me any case that suggests that joining the medical defendants with the manufacturing defendants after the opinion of the LMMA or it's waived or any of these other things, after that's put to bed, is improper or illegal or a court in Louisiana wouldn't entertain a joint case with the manufacturer of the defective product and the doctor who installed it in your foot. In a world where they hadn't jumped the gun. Right. Or it was waived or whatever, where it was not. I mean, that's exactly what the plaintiff should have done, isn't it? Exactly what the legislative scheme has in mind. I want to call your attention to the statute that suspends prescription. Subsection 2A of the statute says first that prescription is suspended during the time the claim is being exhausted. And then it goes on to say the filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors and all joint tort pleasers included but not limited to health care providers. I stand corrected, Your Honor. So really shouldn't the federal district court have just dismissed the whole thing without prejudice and let this run its course if all that's true? If their worry was we want to be sure, we don't want there to be any question, we don't want them to say we waived it, they don't want this or that, then just dismiss the whole thing and say go do your thing. Why does this suddenly create federal jurisdiction that wouldn't otherwise be there? That's my question. The scheme in this country since the turn of the century has been if improperly joined defendants are found to be improperly joined, then they're dismissed and the motion to remand is denied and federal diversity jurisdiction goes forward. But here again you've got a temporal quality to this. This isn't the quintessential sham defendant. This isn't the poor hapless so-and-so who's never going to have a case against them. This isn't the I sued you on a note and I also sued her on a car wreck where they have nothing to do with each other. So none of that really has anything to do with the turn of the century as far as I can tell. Well, I disagree with that, Your Honor. Okay. In this respect. I know you win the amicus battle, but that's just because she didn't go out and get her people. Go ahead. Don't you have to overrule Milder? Yes, and Holder. I mean Milder precisely says that when an in-state defendant who has not exhausted his claim is removed along with an out-of-state defendant, the district court properly dismissed that unexhausted claimant and assumed jurisdiction over the claim against the out-of-state defendant. I mean isn't that exactly what it holds? That is exactly what it holds, Your Honor. And, yes, it would have to be overturned. It's completely incompatible and inconsistent with doing what's necessary. Okay. Well, you asked for en banc, and in en banc we can't overrule it. Yes, you can, Your Honor. And so if the rest of my colleagues don't agree with the way the panel distinguished Milder, which I think is a good distinction, but if it's not, then there isn't any reason why we have to adhere to Milder unless it stands on its own, and that's what we're arguing about here. There is a matter of in-bank votes. Counsel, let me ask you, if this had not been removed and there had been a motion in the Louisiana trial court to dismiss because of the unexhausted, just to dismiss those defendants, could the case have continued against your client? Yes. And could you have removed at that time? Yes. And we'd be two tracks under that situation. That is exactly right, Your Honor. There's actually a question about that, though. There is a question about that, whether in fact— It was my question. No, I mean there's a question in the law about that, whether in fact if a party is involuntarily dismissed, that that necessarily then allows you to remove at that point when a non-diverse defendant is involuntarily removed. You haven't actually briefed that. No, Your Honor. Okay. I can't speak to that. One of the reasons I said I disagreed with Your Honor earlier about this being a sham and the rest of this stuff is very important. The medical review panel, when it did issue its opinion, said that these claims against all those medical defendants was invalid. Well, they found that the doctors performed adequately. However, that doesn't prevent the lawsuit that you're— if you were representing the medical defendants, which I agree would be a conflict, but if you were, you'd come in and wave that around, but you wouldn't win the case on that. It wouldn't be dispositive. It would not be dispositive. It'd be a quiver in your—or an arrow in your quiver. But as the plaque brief points out, the majority of Louisiana medical malpractice cases are now resolved in that framework, not in litigation. So it's working. All right.  Thank you, Your Honor. All right. Rebuttal, counsel? All right. A couple of points here. One, I believe that counsel mentioned Brister. I'm not sure if he was talking about another case, but that case was not in front of the federal— Try to keep your—give us your theater voice when you're looking down on your page. I'm sorry, Your Honor. All right. Pelley's mentioned the case Brister as to the express language of the LMMA and their contention that the Louisiana legislature meant for this type of situation where the plaintiff would be removed and the defendant would be able to dismiss against the nondiverse medical defendants. However, I'm not sure if there was another case, but that was under the trial court level and it had to do with a prematurity exception. And that goes actually to the point where the state court should have the opportunity to dismiss under the prematurity exception rather than the federal court using an improper joinder doctrine to defeat the nondiverse— What about Judge Southwick's question? What's your position? If the state court had dismissed the individual defendants outright, wouldn't Stryker then have had the ability to remove the federal court? I'm sorry. If the state court had— Okay. What's your position? I have not briefed. I believe that speaks to maybe the voluntary-involuntary rule. I believe that the court could have allowed the removal in that instance. I have not seen any case that said otherwise. And in fact, the cases that remanded previous to Holder and Melder specifically spoke to that issue. Again, the Doe cases, Armour and Cutter, and the long line of cases that I previously briefed in the Fifth Circuit. Also, as to the jumping-the-gun issue, in the case that I previously mentioned, the Johnson-Schemidt case, it's pointed out that the filing for all of the defendants to wait until the panel has convened and the tolling could be an issue. And there has been case law that shows that the plaintiffs do go ahead and file suit against all the feasors in regards to the fact that the prescription may run. If the LMMA finds that the medical defendants aren't in fact medical defendants, then that toll might not have actually happened, and therefore then the claims against the manufacturer defendants could be at issue. If you had stayed in state court and the judge had indicated that he or she was going to dismiss the medical defendants without prejudice for this exhaustion issue, would you have asked to stay against the manufacturing, stay the case, so that once the matter is completed and you can sue the medical defendants, they can stay in the same case? Was it important to you that they be in the same case, these two groups? Absolutely, Your Honor. We asked for a stay in this case. We already did that. Yes, absolutely. I mean, in either court, I guess you asked for the stay. I asked for the stay. And could the Louisiana trial court have granted a stay against the manufacturing defendants, not the medical defendants? I believe the circuit has been split on that, just like it has been split on whether or not they remand the LMMA. No, I'm talking about in Louisiana, the state courts. Are you saying the Louisiana Court of Appeals is split? The Louisiana Courts of Appeal are split? As of right now, I can only speak to the cases that I've personally been involved in where they have stayed the cases, so it's my understanding that, yes, they do. Let me ask you again. Tell me, I didn't quite understand why the prudent thing to do here is not to wait until you have exhausted your claim against your medical providers and then file a suit against both the medical provider and the manufacturing defendant at the same time in state court, if that's where you want to be. Your Honor, I believe the main point is that it's out of an abundance of caution. This is not a sham defendant. We did not pull in a doctor that did not operate on my client's foot. It was someone that was actually directly involved. There's a claim, there's a cause of action against them. We filed suit against all of the tort feasors because of the same reason that I said. Under the LMMA, only medical defendants under the Act, that limitation, that tolling applies to them. And as to joint tort feasors, it also applies to them if it's tolled against medical defendants under the LMMA. So that's what the Johnson-Schemidt case speaks to, is to explaining why it does happen where the plaintiff's counsel does file suit against all the tort feasors. Because you don't want to have malpractice against you  I'm sorry, Your Honor? I said you don't want to face a malpractice claim that you didn't file timely against his client, and you're not sure the tolling applies. Is that the answer to the question? No, I don't. No, you're not sure whether or not the tolling applies to the manufacturing defendant. In fact, it's not clear, and it could be that it's not applying. So you need to file against his client earlier. That's a very friendly question. Would you preserve my client's claims? Absolutely, Your Honor, I would. I'm not sure. Would you remind me? I'm not sure the counsel embraced the answer or not, but maybe on some rebuttals she did. I think there's another question over here. Would you remind me, did you file a motion to remand in federal district court? No, Your Honor, I did not. Why not? Frankly, Your Honor, for a couple of reasons. One, we were not opposed to a faster docket situation in the federal court system. I did not foresee a problem with moving forward in this court, in the district court. It was a judgment call, and we chose not to remand. So as against home cooking or quick cooking? I don't know if I would speak to that, because I don't think that this is home cooking either way. And I think really the defendants in the appellees want the Holder and Melder cases to stand as a bright line, very, very broad rule as to exhaustion, so that they can avail themselves of the federal court system and quickly go through a 12B6. And you understand that subject matter jurisdiction can't be weighed by your failure to move to remand. Yes, Your Honor. And this is something you need to kind of scrutinize in the future to avoid standing here, although I'm sure you're having a good time. Absolutely, Your Honor. Yes, I do. Again, it was a judgment call that I chose not to do. All right, you've got 39 seconds to wrap up with anything you want to leave us with. Thank you, Your Honor. Okay, so ultimately we do ‑‑ our contention is not that the Holder and Melder decisions were overruled. However, since it's an en banc hearing, we do ask that the holdings either be narrowed considerably or overruled, and the exhaustion of the LMMMA for the medical defendants not be a bar to the state's remanding. The procedural issues as well as the substantive issues have shown that the plaintiff does have a reasonable basis to see that the state court would find that the medical defendants would be liable in this case. All right. Thank you. Thank you, counsel, both sides, for your briefing and argument. This completes the argued cases for this morning. The en banc court stands adjourned.